Douglas E. McKinley
8350 W Grandridge Boulevard
Suite 200-431
Kennewick, Washington 99336
(509) 628-0809 phone
(509) 392-8083 fax
Attorney for SOLGEN POWER, LLC

The Honorable James L. Robart

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CORY CUMMINS AND SAVANNAH CUMMINS,<br><br>           Plaintiff,<br><br>vs.<br><br>SOLGEN POWER LLC and VERITY CREDIT UNION,<br><br>           Defendant | Case No. 3:23-cv-05363-JLR<br><br>**DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION**<br><br>**Note on Motion Calendar: September 1, 2023**<br><br>**Oral Argument Requested** |

TO: THE CLERK OF THE ABOVE-ENTITLED COURT

AND TO: Christina Latta Henry, Attorney for Plaintiff

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 1

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants, Solgen Power, LLC ("Solgen") and Verity Credit Union (Verity) move this Court for an order dismissing Plaintiff's Complaint on the grounds that they have failed to state a claim upon which relief may be granted, dismissing each of their individual claims for relief, or, in the alternative, dismissing Plaintiffs' Complaint and compelling arbitration under the Federal Arbitration Act (FAA), because Plaintiffs have agreed to arbitrate this dispute.

MEMORANDUM

I.   **Introduction**

Within their Complaint, the Plaintiffs, Cory Cummins and Savannah Cummins, (hereafter "Cummins") recite that on April 24, 2022 they entered into a written agreement with Solgen Power, LLC (hereafter "Solgen") for the installation of a roof-top solar system on the Cummins' home. (ECF 1, ¶ 6). Cummins' Complaint then recites that at the same time they entered into the contract with Solgen they also entered into a loan agreement with Verity Credit Union (hereafter "Verity") to finance the solar system.  (ECF 1, ¶ 12)

1    While the Cummins' Complaint makes numerous vague allegations concerning

2    such matters as construction delays, errors in the installation of the solar system,

3    damage to their roof, and the manner in which they were presented the contracts

4    that they admit they signed, the Cummins' Complaint does not seek relief under

5    any theory related to those allegations.  Instead, the Cummins concede that the

6    contracts that they signed were binding, and that the system that they purchased

7    was fully installed and operational on January 18, 2023 (ECF 1, ¶ 19).  They then

8    seek to be freed from their obligations under those contracts by claiming that

9    Verity's loan agreement violated the Truth in Lending Act ("TILA"), 15 USC §

10   1602(g) and Regulation Z, 12 CFR § 1026.2(a)(17) and that Solgen violated the

11   Washington Consumer Protection Act, RCW 19.86, et seq. ("CPA") for alleged

12   representations made by the Solgen salesperson at the time of the sale.

13   To support those claims, the Cummins implausibly recite that even though the

14   solar system they were buying had a price tag of $124,550.45, and the loan for that

15   amount was secured by their home, the Cummins never actually bothered to read

16   any of the contracts they signed.  They then fail to include those same contracts

17   (that allegedly form the basis for their claims) with their Complaint.  This is

18   understandable, because the language contained within the same contracts also

19   demonstrates that their claims are unsustainable under FED. R. CIV. P. 12(b)(6),

20   DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND
ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 3

and even if they were sustainable, they are subject to binding and mandatory arbitration.

## Facts

The heart of the Cummins' factual allegations are found at paragraph 29 of the Complaint, where the Cummins make three allegations to support their contention that Solgen and Verity violated the TILA and the Washington's CPA.  Taken in order, the Cummins' allegations are as follows:

1) Solgen misled Mr. and Mrs. Cummins to believe their electricity bills would reduce more than 85% after purchase of the solar panels when it only produced less than $15 to $20 in monthly savings and financing a defective product that did not deliver as intended.

2) Solgen misrepresented the amount and timing for tax incentive rebates from federal income taxes due to the purchase of solar panels.

3) Verity acted in an unfair and deceptive manner by failing to adhere to the requirements of the Truth in Lending and Regulation Z accurately disclose the identity and address of the creditor, amount financed, annual percentage rate, finance charge, total of payments, and total sale price of the loan it approved in violation of 15 U.S.C. 1638(a) and Reg. Z § 1026.18. (ECF 1, ¶ 29)

Each of these allegations are directly refuted by the terms of the contracts the Cummins signed.  Those contracts are provided herewith as exhibits to the declaration of Douglas E. McKinley, Jr., the undersigned attorney for Solgen, and are properly before the Court as exhibits to this motion.  See *Coto Settlement v.*

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 4

*Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (finding that for purposes of a motion under FED. R. CIV. P. 12(b)(6) the court may consider documents which are incorporated by reference into the complaint, even if the document is not physically attached.)  Exhibit 1 is the contract between Solgen and Cummins (the Solgen Contract) and Exhibit 2 is the loan agreement between Verity and Cummins (the Verity Contract). Together, they demonstrate that the Cummins' Complaint should be dismissed.

The Solgen Contract is only 12 paragraphs long.  The paragraphs that are relevant to the Cummins' allegations and this motion are paragraphs 2, 7, 8, 9, 10 and the last two lines of paragraph 11.  They read as follows:

> 2. **<u>Estimated Completion Date</u>**. It is anticipated that the installation of the Solar Array shall commence on or around the day set forth on the first page of this Agreement and will take approximately 8-14 weeks to complete. Notwithstanding anything in this Agreement to the contrary, the actual commencement date and the completion date may vary due to circumstances out of the Company's control, such as project conditions, weather, material availability, Force Majeure, etc. *The Company does not guarantee that the installation of the Solar Array will start on or before the estimated commencement date or be completed on or before the estimated completion date set forth on the first page of this Agreement. (italics added).*

> 7. **<u>Rebate/ Tax Credit Program</u>**. All rebates and tax credits are issued through third parties and *the Company does not guaranty the availability of or Customer's eligibility for any rebates or tax credits.* The Company may assist the Customer in identifying the programs that offer rebates, incentives, and/or tax credits, applicable to the Customer's specific situation, solely as a courtesy to the Customer. *(italics added).*

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION

- 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

8. **No Guarantee or Representation of Energy Savings or Cost Savings**. The Company does not guarantee any energy savings, efficiencies, or cost savings through the use of the Solar Array. Information provided about energy savings, efficiencies, and cost savings is solely for illustrative purposes and is based on historic data and information obtained and provided by the manufacturer and other third parties. The Company makes no representation regarding the accuracy of the information provided. Customer assumes all risk relating to reliance upon any information provided.

9. **No Authority of Alter Terms**. No sales representative has the authority to add, delete, or modify the typed terms of this agreement, either in writing or verbally. Customer agrees it is not relying on verbal assurances or statements of any person.

10. **Arbitration**. All disputes arising out of or relating to this Agreement shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association under construction industry arbitration rules. The substantive law of Washington State will apply to any such arbitrations without respect to any conflict of law's provisions. The arbitration will be conducted in Franklin County Washington.

11.  THIS CONTRACT CONTAINS A WAIVER OF JURY TRIAL AND A BINDING ARBITRATION PROVISION WHICH AFFECTS YOUR LEGAL RIGHTS

The relevant portions of the Verity Contract; the Truth in Lending disclosure, the identification of the parties, and the assignment clause, are shown below.  The top of the first page of the Verity Contract identifies the Parties:

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 6

**RETAIL INSTALLMENT CONTRACT**

| | In this Retail Installment Contract ("Contract"), the words "we," "us," "our" and "Seller" mean the Seller identified below, and Seller's successors and assignees. The words "you," "your," and "Buyer" mean the Buyer identified below who signs or authenticates this Contract. Words or phrases preceded by a checkbox (☐) are only applicable if the checkbox is marked (e.g. ☒) |

| Date of Contract | Contract Maturity Date |
|---|---|
| 05/24/2022 | 05/24/2047 |

| **SELLER** *(Name and Address)*<br>SolgenPower<br><br><br>Tax ID # | **BUYER** *(Name and Address)*<br>Cory Cummins<br>Savannah Cummins<br>29 Parke Ln<br>Longview WA  98632 |

You (Buyer) agree to buy, subject to the terms of this Contract, and we (Seller) agree to sell the Goods and Services described below in the section "Description of Goods and Services." The goods covered by this Contract are sold in their current condition, together with any attachments or accessories.

   The fact that the Verity Agreement was to be immediately assigned from Solgen to Verity was disclosed to the Cummins.  In addition to the "Verity" logo at the top of the Verity contract, the assignment of the Verity contract from Solgen to Verity was set forth directly below the Cummins' signatures on Page 3 of the Verity contract:

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 7

**RETAIL INSTALLMENT CONTRACT**

DocuSigned by:

X _____   \d4/24/2022
Buyer's Signature Cory Cummins       Date

DocuSigned by:

X _____   \d4/24/2022
Buyer's Signature Savannah Cummins      Date

**SELLER**

By _Solgen Power_____   Its _____

| SELLER WARRANTY AND ASSIGNMENT |
| --- |

For value received, Seller hereby sells, assigns and transfers to **VERITY CREDIT UNION** ("Assignee") all rights, title, and interest Seller has which is related to Seller's financial interest in this Contract, provided, however, that none of Seller's obligations are conveyed to Assignee, all of which Seller retains.  To induce Assignee to purchase this Contract, Seller represents and warrants to Assignee as follows:

1. This Contract is and will remain valid, binding and enforceable.
2. The Signature of any Buyer is genuine.
3. The subject goods have been delivered to the Buyer, and Buyer has purchased the same for the Buyer's own use and benefit.
4. All facts set forth in this Contract are true.
5. All statements of Buyer made on any forms related to this Contract are true to the best of Seller's knowledge, information and belief.
6. In relation to the transaction to which this Contract relates, Seller has complied with all applicable federal and state laws and regulations, including without limitation, the federal Truth-In-Lending Act and Equal Credit Opportunity Act.
7. If this Contract is made in connection with a transaction solicited in person at a place other than Seller's business address shown on this Contract, Seller has furnished all required notices and has complied with all applicable documentation and timing requirements imposed by Washington law (Title 63, Chapter 63.14, Washington Statutes).

All representations and warranties of Seller state herein are made to induce Assignee to purchase this Contract; and, in the event of a breach, without regard to Seller's or Assignee's knowledge or lack of knowledge with respect thereto at the time of occurrence or otherwise, Seller will, upon the demand of Assignee, repurchase this Contract from Assignee for the entire balance then remaining unpaid.  Seller waives all demands and notices of default and consents that, without notice to Seller, Assignee may extend time to or compromise or release, by operation of law or otherwise, any right against Buyer or other obligated party.

**Seller agrees that this Contract is sold, assigned and transferred to Assignee with full recourse to Seller and subject to Seller's unconditional guarantee.**

**Assignment:**  Seller does hereby assign this Contract to **Verity Credit Union, P.O. Box 75974, Seattle, WA 98175-0974**, under the terms of Seller's Warranty and Assignment.

**SELLER**

By _Solgen Power_____   Its _____   Date _____

**NOTICE:  ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 8

1    The Truth in Lending disclosure is then prominently displayed on Page 1 of

2  the Verity Contract:

3

| FEDERAL TRUTH-IN-LENDING DISCLOSURE | | | | |
|---|---|---|---|---|
| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate. | **FINANCE CHARGE** The dollar amount the credit will cost you. | **Amount Financed** The amount of credit provided to you or on your behalf. | **Total of Payments** The amount you will have paid when you have made all payments as scheduled. | **Total Sale Price** The total cost of your purchase on credit including your down payment of: |
| **3.990** % | $ 75176.23 | $ 124550.45 | $ 199726.68 | $ 124550.45 . $ 0.00 |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When payments are due | |
|---|---|---|---|
| 1 - 18 | 422.07 | Monthly | 06/23/2022 |
| 19 - 300 | 681.31 | | 12/23/2023 |

**Security:** You are giving us a security interest in: ☒ the goods or property being purchased; ☐ _____
☐ **Required Deposit.** The Annual Percentage Rate does not reflect the effect of the required deposit.
**Late Charge:** If your payment is more than 10 days late, you will be charged a fee of 5.0% of the past due payment or $25, whichever is greater.
**Prepayment:** If you pay off early, you will not have to pay a penalty.                                    **Filing Fee:** $ 200.00
See the text of this Contract for additional information about nonpayment, default, and any required repayment in full before the scheduled date.

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| A. Sale Price | D. Amount Paid to Public Officials (UCC Fin. Stmt.)  $ 200.00 |
| 1. Sale Price  $ 124550.45 | E. Unpaid Principal Balance (C + D)  $ 124550.45 |
| 2. State Sales Tax  $ 0.00 | F. Required Deposit Balance  $ |
| 3. Total Sale Price (A1 + A2)  $ 124550.45 | G. Amount Financed (E – F)  $ 124550.45 |
| B. Cash Down Payment  $ 0.00 | H. **Finance Charge** (Service Charge)  $ 75176.23 |
| C. Unpaid Balance of Sale Price (A3 – B)  $ 124550.45 | I. Time Balance Owed by Buyer (G + H)  $ 199726.68 |

12    The Cummins' Complaint, when read in the context of the Solgen Contract and

13  the Verity Contract, therefore does not present the Court with a set of facts upon

14  which relief may be granted. The Solgen Contract specifically disclaims the

15  alleged misrepresentations that form the basis of the Cummins' claims related to

16  the Washington Consumer Protection Act, and the Verity Contract complies with

17  the Truth in Lending Act.  Further, even if the Cummins Complaint did have

18  cognizable claims, the Cummins agreed that those claims are to be resolved using

19  binding and mandatory arbitration.

20  DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 9

1

## II.   __Standard of Review__

2       To survive a motion to dismiss, "a complaint must contain sufficient factual

3   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

4   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

5   *Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the

6   plaintiff pleads factual content that allows the court to draw the reasonable

7   inference that the defendant is liable for the misconduct alleged." *Zixiang Li v.*

8   *Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). "The plausibility standard requires more

9   than the sheer possibility or conceivability that a defendant has acted unlawfully."

10  *Id*. Dismissal is proper where the complaint either "lacks a cognizable legal

11  theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Id*.

12      While a court must accept all well-pleaded facts as true, "a plaintiff's

13  obligation to provide the grounds of its entitlement to relief requires more than

14  labels and conclusions, and a formulaic recitation of the elements of a cause of

15  action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

16  "Threadbare recitals of the elements of a cause of action, supported by mere

17  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 674

18  (2009); see also *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996)

19  ("conclusory allegations of law and unwarranted inferences are insufficient to

20  DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND
ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 10

defeat a motion to dismiss for failure to state a claim."). Therefore, dismissal for "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory" is appropriate under Rule 12(b)(6). *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## **Argument**

### a. **Dismissal of TILA Claim Under FED. R. CIV. P. 12(b)(6)**

Cummins Complaint contains a formulaic recitation of the legal conclusion that the Verity contract failed to accurately disclose the identity and address of the creditor, amount financed, annual percentage rate, finance charge, total of payments, and total sale price of the loan.  However, a simple examination of the Verity Contract clearly shows that each and every one of those items is present.  If any of them are somehow defective, Cummins' Complaint fails, entirely, to identify any of the alleged defects.  Instead, Defendants are left to guess what the Cummins find objectionable about the Verity Contract because other than the broad and non-specific legal conclusions, the Cummins Complaint fails entirely to state any facts with any specificity that would show how the identity and address of the creditor, amount financed, annual percentage rate, finance charge, total of payments, and total sale price of the loan set forth in the Verity Contract are

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 11

incorrect.  Absent such a showing, Cummins' Complaint fails to fails to "allege

sufficient facts to support a cognizable legal theory" (the pleading standard of

*Ashcroft v. Iqbal*, and *Bell Atlantic Corp. v. Twombly*), and the Cummins' claims

under the TILA must therefore be dismissed.

        **b.**  <u>**Dismissal of Washington CPA Claim Under FED. R. CIV. P.**</u>

           <u>**12(b)(6)**</u>

As set forth in the factual section *infra*, the Cummins make only two factual

allegations to support their claim under Washington's Consumer Protection Act:

1)    Solgen misled Mr. and Mrs. Cummins to believe their electricity bills would reduce more than 85% after purchase of the solar panels when it only produced less than $15 to $20 in monthly savings and financing a defective product that did not deliver as intended.

2)    Solgen misrepresented the amount and timing for tax incentive rebates from federal income taxes due to the purchase of solar panels.

However, each of these allegations are directly and completely contradicted

by the Solgen Contract the Cummins admit that they signed.  With respect to the

first claim, that Solgen somehow misrepresented the amount of power the solar

system would produce, the Solgen Contract specifically and directly disclaimed

any such representations at paragraph 8, which recites:

8. <u>**No Guarantee or Representation of Energy Savings or Cost Savings**</u>. *The Company does not guarantee any energy savings, efficiencies, or cost*

*savings through the use of the Solar Array. Information provided about energy savings, efficiencies, and cost savings is solely for illustrative purposes and is based on historic data and information obtained and provided by the manufacturer and other third parties.* The Company makes no representation regarding the accuracy of the information provided. Customer assumes all risk relating to reliance upon any information provided. (*italics added.*)

With respect to the second claim: that Solgen somehow misrepresented the amount and timing of the tax rebate, again, the Solgen Contract specifically and directly disclaimed any such representations at paragraph 7, which recites:

> 7. **Rebate/ Tax Credit Program**. All rebates and tax credits are issued through third parties and *the Company does not guaranty the availability of or Customer's eligibility for any rebates or tax credits.* The Company may assist the Customer in identifying the programs that offer rebates, incentives, and/or tax credits, applicable to the Customer's specific situation, solely as a courtesy to the Customer.  (*italics added.*)

Thus, with respect to both of the Cummins' specific claims, the Cummins are simply asking the Court to ignore the agreement they signed, and hold Solgen responsible for the alleged misrepresentations of the Solgen salesperson. However, again, the Solgen Contract specifically and directly disclaimed and refutes any such representations and assurances.  The Solgen Contract that the Cummins signed specifically disclaims the exact misrepresentations the Cummins claim as the basis for their claims under Washington's CPA.  Further, the Solgen

Contract specifically addresses the Cummins' ability to rely on any such

representations and assurances at paragraph 9, where it recites:

> 9. **No Authority of Alter Terms**. No sales representative has the authority
> to add, delete, or modify the typed terms of this agreement, either in writing
> or verbally. *Customer agrees it is not relying on verbal assurances or
> statements of any person. (italics added.*)

Given the contractual language, the issue then becomes, can a party's

complaint survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) when it

depends entirely on factual allegations that are completely and directly

contradicted by a written instrument signed by the same party?

The answer is no.

Contracting parties in Washington state are held to the agreements they sign

even if they do not bother to read them.  See, e.g., *Bonjorni v. Wells Fargo Bank,

N.A.*, 2012 WL 836381, at *5 (W.D. Wash. Mar. 9, 2012) (rejecting procedural

unconscionability challenge where "the critical terms of the contract . . . were

disclosed in such a way that the average borrower could not miss them if he read

the contract.").  The Solgen Contract that the Cummins admit that they signed

specifically contradicts the allegations that they were misled.  The Cummins have

not made any allegations, such as procedural unconscionability, that would excuse

them from being bound by the Solgen Contract that they signed.  The specific

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND
ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 14

language of the Solgen Contract then refutes each of the factual allegations, and for

purposes of a motion under FED. R. CIV. P. RULE 12(b)(6), the signed contract

controls.  The Cummins' CPA claims must be dismissed.

### c.  **Dismissal for Compelled Arbitration**

The Parties' agreement to arbitrate the disputes is both broad and

comprehensive.  Set forth at paragraph 10 and the end of paragraph 11, the

Cummins agreed as follows:

> 10. **Arbitration**. All disputes arising out of or relating to this Agreement
> shall be resolved by binding arbitration in accordance with the rules of the
> American Arbitration Association under construction industry arbitration
> rules. The substantive law of Washington State will apply to any such
> arbitrations without respect to any conflict of law's provisions. The
> arbitration will be conducted in Franklin County Washington.
>
> 11.  THIS CONTRACT CONTAINS A WAIVER OF JURY TRIAL AND
> A BINDING ARBITRATION PROVISION WHICH AFFECTS YOUR
> LEGAL RIGHTS

The Federal Arbitration Act ("FAA") provides that a "written provision in

any ... contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract or transaction ...

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he Act leaves no

place for the exercise of discretion by a district court, but instead mandates that

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND
ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 15

district courts shall direct the parties to proceed to arbitration on issues as to which

an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470

U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4).

"Under the FAA, the basic role for courts is to determine (1) whether a valid

agreement to arbitrate exists and, if it does, (2) whether the agreement

encompasses the dispute at issue."' *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559,

564-65 (9th Cir. 2014) (quoting *Chiron Co1p. v. Ortho Diagnostic Sys., Inc.*, 207

F.3d 1126, 1130 (9th Cir. 2000)). If the response is affirmative on both counts,

then the FAA requires the court to enforce the arbitration agreement in accordance

with its terms. *Chiron*, 207 F.3d at 1130. "When determining whether parties have

agreed to submit to arbitration, ' [courts] apply general state-law principles of

contract interpretation, while giving due regard to the federal policy in favor of

arbitration by resolving ambiguities as to the scope of arbitration in favor of

arbitration."' *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir.

2014) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir.

2009)).

The party resisting arbitration bears the burden of showing that the arbitration

agreement is invalid or does not encompass the claims at issue. *Green Tree Fin.*

*Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000) (citations omitted). Where

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND
ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 16

1   the arbitration provision is broad, there is a heightened presumption in favor of

2   arbitration such that the party resisting arbitration must show "forceful evidence of

3   a purpose to exclude the claim from arbitration." *AT&T Techs., Inc. v.*

4   *Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United*

5   *Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585 (I 960)).

6   The FAA does "not limit the court's authority to grant a dismissal" where the

7   "language contained in the arbitration provision is sufficiently broad to bar all of

8   plaintiffs claims." *Veritas Construction, Inc. v. LBG 38, LLC*, No. Cl6-1811-JCC,

9   2017 WL 347476, at *I (W.D. Wash., Jan. 21, 2017) (quoting *Sparling v. Hoffman*

10  *Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)); see also *Genias Graphics*

11  *Gmbh & Co. v. KG v. Tecplot, Inc.*, No. Cl3-1064-JCC, 2013 WL 12092542 at *3

12  (W.D. Wash. Aug. 21, 2013) ("Even where a party moves for a stay pending

13  arbitration, the Court has discretion to dismiss a case if it finds that all the claims

14  before it are subject to mandatory arbitration.").

15      As for state law considerations, Washington policy also favors arbitration.

16  RCW 7.04A.060; *Adler v. Fred Lind Manor*, 153 Wash.2d 331, 342, 103 P.3d 773

17  (2004). This policy does not, however, lessen the court's responsibility to

18  determine whether the arbitration contract is valid. *Hill v. Garda CL Nw., Inc.*, 179

19  Wash.2d 47, 53, 308 P.3d 635 (2013). The agreement to arbitrate is a contract, the

20  DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND
ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 17

1   validity of which courts review absent a clear agreement to not do so. *Hill v. Garda*

2   *CL Nw., Inc.*, 179 Wash.2d 47, 53, 308 P.3d 635 (2013). The burden of

3   demonstrating that an arbitration agreement is not enforceable is on the Party

4   opposing the arbitration. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash.2d 293, 302,

5   103 P.3d 753 (2004).

6          The requirement to arbitrate the dispute between the Parties is also not

7   limited to the contract claims.  Washington Courts have uniformly held that

8   ancillary or derivative matters, such as the statutory claims set forth in Plaintiffs'

9   Complaint, are also included in the arbitration.  Washington courts apply a "`strong

10  presumption in favor of arbitrability,'" and "`[d]oubts should be resolved in favor

11  of coverage.'" *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula*, 130

12  Wash.2d 401, 414, 924 P.2d 13 (1996) (quoting *Council of County & City Emps. v.*

13  *Spokane County*, 32 Wash. App. 422, 424-25, 647 P.2d 1058 (1982)). "If the

14  dispute can fairly be said to invoke a claim covered by the agreement, any inquiry

15  by the courts must end." *Heights at Issaquah Ridge*, 148 Wash. App. at 403, 200

16  P.3d 254. "`[A]ll questions upon which the parties disagree are presumed to be

17  within the arbitration provisions unless negated expressly or by clear implication.'"

18  *Peninsula Sch. Dist.*, 130 Wash.2d at 414, 924 P.2d 13 (quoting *Council of County*

19

20  DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND
    ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
    - 18

*& City Emps.*, 32 Wash. App. at 424-25, 647 P.2d 1058). *Berman v. Tierra Real Estate Group, LLC*, 515 P. 3d 1004 (Wn. App. 1st Div. 2022).

Both the FAA and Washington law require arbitration of the Cummins' claims. The Parties' agreement to arbitrate the disputes is both broad and comprehensive, and easily covers the Cummins' claims under the TILA and Washington's CPA. If the Court does not dismiss the Cummins' Complaint outright, for the reasons set forth above, the FAA and Washington law both require the Court to dismiss the Cummins' Complaint and compel arbitration of the Cummins' claims.

///

///

///

///

///

///

///

///

///

///

///

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 19

## **<u>Conclusion</u>**

For the reasons set forth herein, the Defendants Solgen and Verity respectfully request that the Court rule that the Plaintiffs' Complaint fails to state a claim upon which relief may be granted under FED. R. CIV. P. Rule 12(b)(6) and dismiss the Plaintiffs' Complaint in its entirety on that basis.  If the Court is not inclined to dismiss the Plaintiffs' Complaint under FED. R. CIV. P. Rule 12(b)(6), Defendants Solgen and Verity respectfully request that the Court nevertheless dismiss the Plaintiffs' Complaint and compel arbitration.  A Proposed Order is filed herewith to that effect.

Dated this 25th day of July, 2023.


"I certify that this memorandum contains 3,655 words, in compliance with the Local Civil Rules."


/s Douglas McKinley
Douglas E. McKinley, WSBA #20806
8350 W Grandridge Boulevard
Suite 200-431
Kennewick, Washington 99336
(509) 628-0809 phone
(509) 392-8083 fax
Email: doug@mckinleylaw.com

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND
ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
- 20

1

SERVICE CERTIFICATE

2    I certify that on July 25, 2023, I electronically filed the foregoing

3 together with the Declaration of Douglas E. McKinley, Jr., which included two

4 exhibits, and a Proposed Order with the Clerk of the Court using the CM/ECF

5 System, which will notify the following:

6

7    Christina Latta Henry
     HENRY & DEGRAAFF PS
8    113 CHERRY ST
     PMB 58364
9    SEATTLE, WA 98104-2205
     Attorney for the Plaintiffs

10
                                    /s Douglas McKinley
11                                  Douglas E. McKinley, WSBA #20806
                                    8350 W Grandridge Boulevard
12                                  Suite 200-431
                                    Kennewick, Washington 99336
13                                  (509) 628-0809 phone
                                    (509) 392-8083 fax
14                                  Email: doug@mckinleylaw.com

15

16

17

18

19

20   DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND
     ALTERNATIVELY, MOTION TO COMPEL ARBITRATION
     - 21