1   Douglas E. McKinley                                    The Honorable James L. Robart
    8350 W Grandridge Boulevard
2   Suite 200-431
    Kennewick, Washington 99336
3   (509) 628-0809 phone
    (509) 392-8083 fax
4   Attorney for SOLGEN POWER, LLC

5

6

7

8

9                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
10

11  CORY CUMMINS AND SAVANNAH          Case No. 3:23-cv-05363-JLR
    CUMMINS,

            Plaintiff,
12
                                       **EXHIBIT 1 TO DECLARATION OF**
    vs.                                **DOUGLAS MCKINLEY IN**
13                                      **SUPPORT OF DEFENDANT'S**
                                       **MOTION TO DISMISS PURSUANT**
    SOLGEN POWER LLC and VERITY         **TO FED. R. CIV. P. 12(b)(6), AND**
14  CREDIT UNION,                       **ALTERNATIVELY, MOTION TO**
                                       **COMPEL ARBITRATION**
            Defendant
15
                                       **Note on Motion Calendar:**
16                                      **September 1, 2023**

17                                      **Oral Argument Requested**

18

19

    EXHIBIT 1 TO DECLARATION OF DOUGLAS MCKINLEY IN SUPPORT OF DEFENDANT'S MOTION TO
20  DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6), AND ALTERNATIVELY, MOTION TO COMPEL
    ARBITRATION
    - 1





```
(509) 931-1663
5715 Bedford St
Pasco, WA 99301
SOLGEPL830RJ
```

# PURCHASE AND INSTALLATION AGREEMENT

## —— CUSTOMER INFORMATION ——

Full Name
**Cory Cummins and Savannah Cummins**

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 29 Parke Ln | Longview | WA | 98632 |

| Phone Number | Email |
|---|---|
| (805) 822-4694 | coryscummins@gmail.com |

## —— PRICING ——

| | | | |
|---|---|---|---|
| Contract Price | $124,550.45 | Down Payment | $0.00 |
| Tax | $0.00 | Amount due At Signing | $124,550.45 |
| Total Amount | $124,550.45 | Amount due | $0.00 |
| | | Finance Method | LoanHomi |

**Final payment will be due after completion of on-site installation of the solar panels and inverters and obtaining final inspection with the local jurisdiction. Interconnection with the utility may take several weeks to complete after installation of the system. Customer understands that the final payment will not be withheld due to any delays from the utility company.

_____         4/24/2022
Cory Cummins                                   Date

_____         4/24/2022
Savannah Cummins                               Date

_____ (Initial here). BY PLACING YOUR INITIALS HERE, YOU ARE CERTIFYING THAT THE ENERGY ADVISOR HAS EXPLAINED TO YOU YOUR RIGHT TO CANCEL WITHIN THREE DAYS OF THIS AGREEMENT AS DESCRIBED IN MORE DETAIL IN A SEPARATE NOTICE WHICH YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED. YOU FURTHER UNDERSTAND AND AGREE THAT UNLESS AND UNTIL YOU EXERCISE YOUR RIGHT TO CANCEL AS PRESCRIBED IN THE NOTICE YOU RECEIVED, ALL AMOUNTS PAID BY YOU TO THE COMPANY ARE NONREFUNDABLE.

## 3 DAY RIGHT OF CANCEL

| COMPANY | | CUSTOMERS |
|---|---|---|
| Company Representative<br>Chris Lee | Title<br>Owner | Customer Name<br>Cory Cummins and Savannah Cummins |

_____  4/24/2022
Company Signature            Date

_____  4/24/2022
Customer Signature          Date

_____  4/24/2022
Customer Signature          Date

DocuSign Envelope ID: E807150C-D1C8-455B-BD58-B2460B462E1E



# PURCHASE AND INSTALLATION AGREEMENT

1.      **Scope of the Work**. In consideration of the Contract Price, the Company, agrees to provide or cause to be provided the labor, materials, tools and equipment for the provision and the installation of the solar energy system, more specifically described on Exhibit A ("the Solar Array") which is attached and incorporated into this Agreement.

2.      **Estimated Completion Date.** It is anticipated that the installation of the Solar Array shall commence on or around the day set forth on the first page of this Agreement and will take approximately 8 – 14 weeks to complete. Notwithstanding anything in this Agreement to the contrary, the actual commencement date and the completion date may vary due to circumstances out of the Company's control, such as project conditions, weather, material availability, Force Majeure, etc. The Company does not guarantee that the installation of the Solar Array will start on or before the estimated commencement date or be completed on or before the estimated completion date set forth on the first page of this Agreement.

3.      **Contract Price**
        3.1.     Timely Payment of the Contract Price. The Customer agrees to pay the Contract Price as set forth on the first page of this Agreement. If the Customer fails to pay any amount when due, time being of the essence, the Company may cease work pending payment or resolution of any dispute. A rate of 2% interest per month or the maximum allowable by law, whichever is less, will be assessed to the outstanding balance. Until the time that Customer has paid Company the entire Contract Price, Customer grants the Company and its agents the right to enter the property and remove the Solar Array in whole or in part. Customer agrees the Solar Array is not a fixture but will remain personal property at all times until all amounts have been paid to the Company. Ownership of the Solar Array will remain with the Company until the Customer has timely paid the full Contract Price. To the extent the Customer may be considered the owner of the Solar Array despite the foregoing, Customer grants Company a security interest in the Solar Array to secure payment of all amounts due under this Agreement, and grants Company the maximum rights available under applicable law in enforcing that security interest. Company may repossess the Solar Array without the requirement for judicial process. The Company also may assert all rights under Washington law relating to contractor/mechanic liens on real property, with respect to the Customer's property.

3.2.    Change Order. The Contract Price may be changed if either (a) a written change order affecting or altering the scope of the work is mutually executed by Company and Customer and the written change order states the precise dollar amount by which the Contract Price will be changed, or (b) extraordinary and unforeseeable events or circumstances beyond the control of the Company and that could not have been anticipated have made completion of the work substantially and materially more expensive.

3.3.    Cancellation Fees. In the event of a cancellation that is outside of the 3 day right of rescission, the Customer will be responsible for a cancellation fee of $3,500 or 10% of the total contract price, whichever is less. The cancellation fee is due immediately and Section 3.1 will apply to any outstanding balance that is owed.

4.    **Credit Cards / Financing**. Customer is free to obtain financing from the institution of the Customer's choice, but the Company can provide Customer with an application from a third-party lender if necessary. If Customer pays the Contract Price with a personal credit card, Customer authorizes the Company to charge an additional 3.5% to the amount charged on such credit card.

5.    **Limitations of Liability**. The Company is not liable, nor will ever be liable, for (i) any delay due to circumstances beyond its control including strikes, casualty, weather, permitting delays, or general unavailability of materials; or (ii) damage to old, deteriorated or improperly installed sub-roofing, roof coverings or supports, siding, exterior covering/painting, non-permitted structures, or any other non-visible to installation. The Company's aggregate liability under this Agreement and/or relating in any way to the work performed is at all times limited to a refund of amounts paid by Customer to the Company under this Agreement, and Customer waives any claim for additional damages beyond that refund amount. Customer shall provide access and make bare the areas such as walls, roof, crawl space, floors, TV/Cable, utilities, etc. as necessary to performance of the work described herein. The Company specifically disclaims and disavows any guaranteed output of the installed Solar Array, including any claims made orally or in writing by the Company or its employees or agents. The Customer waives all claims against the Company for compensatory, punitive, incidental and/or consequential damages arising out of or in any way relating to this Agreement and the actions and omissions relating in any way to the subject matter of this Agreement. Neither the Company nor Customer is liable for any default, delay, or failure in the performance under this contract due to Force Majeure. Force Majeure includes acts of God such as storms, fire, floods, lightening, earthquakes, war, riots, acts of public enemy or other civil disturbance or a strike, lockout, walkout, or other significant labor disputes. Force Majeure cannot be attributed to fault or negligence on the part of the party claiming Force Majeure and must be caused by things beyond parties' reasonable control.

6.      **Warranty**

6.1.      Manufacturer's Warranty. The manufacturer of the Solar Array and any associated components may provide a manufacturer's warranty relating to the equipment. All warranties can be obtained by the Customer directly from the manufacturer and any claims for a manufacturer defect must be directed to the manufacturer and not the Company. The Company may assist the Customer in identifying any applicable manufacturer's warranty(ies) solely as a courtesy.

6.2.      Labor Warranty. The Company warrants the installation of the system against defects in workmanship for a period of ten years following the conclusion of on-site installation (the "Labor Warranty"). This Labor Warranty does not cover Force Majeure, damage covered or normally covered by homeowner's insurance such as falling tree branches, power outages, power surges, other contractor defects, normal wear and tear of the roof, roof shingle failure, sub- structure failure, or siding or electrical system failures. The Labor Warranty also does not cover any damages caused by animals or by improper maintenance of the structure or the system or by any action of parties other than the Company. If the Customer discovers an installation defect within the Labor Warranty period, Customer must immediately notify the Company in writing describing the nature of the defect. If the defect is found to be due to negligence on the part of the Company during installation, the Company will correct the defect at no additional charge to the Customer. If a part repair or replacement is required due to manufacturer's warranty, Customer must first obtain warranty coverage from the manufacture and only then will the Company remedy the workmanship defect. Customer shall bear the costs of all repairs and replacements not expressly covered by the Labor Warranty.

6.3.      Roof Penetration Warranty. The Company warrants that the areas around any rooftop equipment installation where penetrations to the roof were necessary for installation of the photo-voltaic system, up to a radius of 3 feet, will be free of leaks. The period of this warranty is 5 years after completion and satisfactory third-party inspection of the installation. Exclusions to this 5-year warranty are defined as: any leak determined by a third party inspector to be pre-existing or new damage or other roof failure within the installation radius that was due to other factors besides penetrations made during installation.

6.4.      OTHER THAN THE LABOR WARRANTY EXPRESSLY DESCRIBED ABOVE, THERE IS NO WARRANTY BY THE COMPANY WHETHER EXPRESSED, IMPLIED, INCLUDING, WITHOUT LIMITATION, THERE IS NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A GENERAL OR SPECIFIC PURPOSE, AND CUSTOMER WAIVES ALL CLAIMS TO ANY SUCH WARRANTIES AND TO ALL DAMAGES OF ANY NATURE.CUSTOMER IS RESPONSIBLE FOR ALL MAINTENANCE OF THE SOLAR ARRAY; MAINTENANCE IS NOT A PART OF THE LABOR WARRANTY AND PROPER MAINTENANCE IS A CONDITION TO THE CONTINUED VALIDITY OF THE LABOR WARRANTY.


7.      **Rebate / Tax Credit Program.** All rebates and tax credits are issued through third parties and the Company does not guaranty the availability of or Customer's eligibility for any rebates or tax credits. The Company may assist the Customer in identifying the programs that offer rebates, incentives, and/or tax credits, applicable to the Customer's specific situation, solely as a courtesy to the Customer.

8.      **No Guarantee or Representation of Energy Savings or Cost Savings.** The Company does not guarantee any energy savings, efficiencies, or cost savings through the use of the Solar Array. Information provided about energy savings, efficiencies, and cost savings is solely for illustrative purposes and is based on historic data and information obtained and provided by the manufacturer and other third parties. The Company makes no representation regarding the accuracy of the information provided. Customer assumes all risk relating to reliance upon any information provided.

9.      **No Authority of Alter Terms.** No sales representative has the authority to add, delete, or modify the typed terms of this agreement, either in writing or verbally. Customer agrees it is not relying on verbal assurances or statements of any person.

10.     **Arbitration**. All disputes arising out of or relating to this Agreement shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association under construction industry arbitration rules. The substantive law of Washington State will apply to any such arbitrations without respect to any conflict of law's provisions. The arbitration will be conducted in Franklin County Washington. The parties recognize and agree that by agreeing to this provision they are waiving any rights they may have to

11.     **General Provisions**
        11.1.   Notice. Any notice required or permitted to be given hereunder shall be in writing and be delivered by courier, mail, hand delivery, or emailed and will be deemed to have been delivered upon delivery. The address for such communication to the Company shall be Solgen Power LLC, 5715 Bedford St. Pasco, WA 99301 and for the Customer shall be at the address first stated in this Agreement or at such other address as may be given by either party in writing.
        11.2.   Governing Law. This Agreement will be governed and constructed under the laws of the State of Washington without regard to conflict of laws.
        11.3.   Waiver / Severability/Assignment. The waiver or failure of either party to exercise any right in any respect provided for herein shall not be deemed a waiver of any further right hereunder. If any provision of this Agreement is determined to be invalid or unenforceable under any applicable statue or rule of law, it is to that extent to be deemed omitted, and the balance of the Agreement shall remain enforceable. Company may assign the Agreement at any time. Customer may assign this contract only with Company's written permission, in Company's sole discretion, and any assignment by Customer without Company's advance written permission will be void.
        11.4.   Attorney's Fees/Cost. If any action is brought by either party to enforce or interpret this Agreement, or if either party incurs attorneys' fees on account of any breach of this Agreement, the party prevailing must be awarded from the other party payment of all costs and expenses, including attorneys' fees, cost, etc., reasonably incurred.

11.5.   Joint and Several Liability. If any party includes multiple persons, each such person is jointly and severally responsible for all obligations of that party.

**THIS CONTRACT CONTAINS A WAIVER OF JURY TRIAL AND A BINDING ARBITRATION PROVISION WHICH AFFECTS YOUR LEGAL RIGHTS.**

12.   **Marketing Release**

12.1.   I grant permission to Solgen Power and its agents and employees the irrevocable and unrestricted right to reproduce the photographs and/or video images taken of me, my property, or members of my family, for the purpose of publication, promotion, illustration, advertising, or trade, in any manner or in any medium. I hereby release Solgen Power and its legal representatives for all claims and liability relating to said images or video. Furthermore, I grant permission to use my statements that were given during a testimonial, with or without my name, for the purpose of advertising and publicity without restriction. I waive my right to any compensation.

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound, agree to the terms of this Purchase and Installation Agreement by signing below as of the date set forth below.

## SIGNATURES

| COMPANY | | CUSTOMERS |
|---|---|---|
| Print Name | Title | Print Name |
| Chris Lee | Owner | Cory Cummins and Savannah Cummins |

*Chris Lee*                    4/24/2022
Company Signature         Date

*[signature]*                 4/24/2022
Customer Signature        Date

*[signature]*                 4/24/2022
Customer Signature        Date

# ━━━━ SYSTEM SPECIFICATIONS ━━━━

## EXHIBIT A
(Description of PV system work to be performed)

| | |
|---|---|
| System Size* | 23.76 |
| PV Modules | Top Tier All Black Solar Panel |
| Inverter | MICRO -Inverters Hoymiles |

*The system design may change based on a detailed engineering site audit.  Actual system production, solar panel type, offset and savings will vary based on the final system size, design, configuration, utility rates, applicable rebates, system location, local climate and your family's energy usage.  System size will be no less than the agreed upon size defined in this sales contract

Customer SHALL PROVIDE

1.  Customer agrees to cooperate fully in performance of the contract work and to provide safe work environment, and Timely access to the roof or other areas upon which the system is to be installed.

2.  Customer represents and warrants that there are no restrictions or covenants of which it should reasonably be aware that would prevent the installation of the Solar Array.

3.  Customer shall be responsible for removing or covering any items inside or outside the structure that might be soiled or damaged by the performance of work by the contractor.

_____ (Initial here)

_____ (Initial here)

## ———— PROJECT SPECIFICATIONS ————

---

## EXHIBIT B
(Description of additional work to be performed)

---

---

Customer SHALL PROVIDE

1. Customer agrees to cooperate fully in performance of the contract work and to provide safe work environment, and Timely access to the roof or other areas upon which the system is to be installed.

2. Customer represents and warrants that there are no restrictions or covenants of which it should reasonably be aware that would prevent the installation of the Solar Array.

3. Customer shall be responsible for removing or covering any items inside or outside the structure that might be soiled or damaged by the performance of work by the contractor.

_____ (Initial here)

_____ (Initial here)

DocuSign Envelope ID: E807150C-D1C8-455B-BDF8-D2460B462F1E

NOTICE OF CANCELLATION (duplicate required)

Date of transaction: _____

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE DATE OF TRANSACTION LISTED ABOVE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN 10 BUSINESS DAYS FOLLOWING RECEIPT BY THE COMPANY OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE COMPANY AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE COMPANY REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE CUSTOMER'S EXPENSE AND RISK.

IF YOU DO NOT AGREE TO RETURN THE GOODS TO THE COMPANY OR IF THE COMPANY DOES NOT PICK THEM UP WITHIN 30 DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, TO SOLGEN POWER LLC, NOT LATER THAN MIDNIGHT OF  2022-04-29.

(Date at least three business days from date of transaction).

| | | | |
|---|---|---|---|
| _____ | | _____ | |
| Company Signature | Date | Customer Signature | Date |

| | |
|---|---|
| _____ | |
| Customer Signature | Date |

DocuSign Envelope ID: E807150C-D1G8-455B-BDF8-D2460B462E1E

NOTICE OF CANCELLATION (duplicate required)

Date of transaction: _____

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE DATE OF TRANSACTION LISTED ABOVE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN 10 BUSINESS DAYS FOLLOWING RECEIPT BY THE COMPANY OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE COMPANY AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE COMPANY REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE CUSTOMER'S EXPENSE AND RISK.

IF YOU DO NOT AGREE TO RETURN THE GOODS TO THE COMPANY OR IF THE COMPANY DOES NOT PICK THEM UP WITHIN 30 DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, TO SOLGEN POWER LLC, NOT LATER THAN MIDNIGHT OF  2022-04-29.

(Date at least three business days from date of transaction).

_____        _____
Company Signature                        Date        Customer Signature                        Date

_____
Customer Signature                        Date

DocuSign Envelope ID: E807150C-D1C8-455B-BDF8-D2460B462E1E

## Solgen Power Solar Stimulus Package

As part of the Solgen Power Stimulus Package, Solgen Power agrees to cover your initial solar payments until on or about 2022-10-20. Solgen Power will work directly with the bank to cover these payments. The customer will not receive a bill from Verity Credit Union for the first six months.